1  RICHARD LLOYD SHERMAN, ESQ. (State Bar No. 106597)
2  ABHAY KHOSLA, ESQ. (STATE BAR NO. 223555)
   **SHERMAN LAW GROUP**
3  9454 Wilshire Boulevard, Suite 850
   Beverly Hills, California 90212-2911
4  Telephone:  (310) 246-0321
   Facsimile:   (310) 246-0305
5
6  Attorneys for Plaintiffs
7  **YaVaughnie Wilkins and 21 Yellow Tulips LLC**

8
9               **UNITED STATES DISTRICT COURT**

10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  **YaVaughnie Wilkins; 21 Yellow**        CASE NO. CV14-5278 BRO-AJWx
    **Tulips LLC**, a California limited
12  liability company,                       **COMPLAINT FOR:**

13              Plaintiff,                   1.  Declaratory Relief
14                                           2.  Copyright Infringement
              v.                             3.  Interference with Contract
15                                           4.  Receipt and Retention of
    **Micro Productions LLC**, a                Stolen Property
16  California limited liability company;    5.  Intentional Infliction of
    **Charles E. Phillips, Jr.,**               Emotional Distress
17                                           6.  Conversion
18
              Defendants.
19

20
       Plaintiffs **YaVaughnie Wilkins** and **21 Yellow Tulips LLC** (hereafter,
21
    collectively "Plaintiffs") hereby avers as follows:
22
23                    **PRELIMINARY STATEMENT**

24      1.      To the public, Charles E. Phillips Jr. ("***Phillips***") describes himself to be a
25  "prominent business leader and philanthropist."  Indeed, he is presently the CEO for
26  the software company Infor, a former President of Oracle, and a former member of
27  President Obama's  Economic Recovery Advisory Board.  However, Phillips's public
28  face hides a much darker history of misogyny and mistreatment of women.

2.      The instant lawsuit arises from the fact that Phillips has spent years harassing and persecuting his ex-girlfriend YaVaughnie Wilkins ("*Wilkins*").  After being in what she believed to be a monogamous relationship with Phillips for more than eight (8) years, Wilkins discovered to her shock and chagrin in August 2009 that Phillips was still married, as well as seeing other women.  Wilkins immediately ended their relationship.

3.      Despite the fact that Phillips had lied to Wilkins for more than eight (8), had repeatedly been physically abusive to Wilkins during their relationship, and after their break-up has had her watched and followed by scores of private investigators (who have also harassed her friends and loved ones), Phillips has nevertheless perpetrated a false and deceptive narrative: that Wilkins was his "mistress" (when in fact, she was the victim of his lies), that Wilkins is a "crazy woman" and a "woman scorned" (ignoring that Wilkins has been the victim of <u>years</u> of harassment by Phillips and surveillance by Phillips's investigators, and the severe emotional distress arising therefrom), and that Wilkins is seeking to "extort" Phillips (a wholly untrue story).

4.      Most recently, this harassment culminated in (a) Phillips's brazen theft of a Documentary film that Wilkins was preparing about her efforts to move on from their toxic relationship, (b) Phillips's claim that he owns the Documentary that Wilkins prepared at her own expense in order to tell her life story, (c) his creation, using the Documentary's stolen footage of an anti-Wilkins "reel" designed to mislead viewers about Wilkins, and (d) Phillips's attempts to "scare" Wilkins into excusing his misconduct by insisting that there were warrants out for her arrest and that he had knowledge about secret "crimes" she had purportedly committed (all of which was untrue).

## THE PARTIES

5.     Plaintiff **YaVaughnie Wilkins** ("*Wilkins*") is, and at all times relevant hereto has been, an individual residing and doing business in the County of Los Angeles, State of California.

6.     Plaintiff **21 Yellow Tulips LLC** ("*21YT*") is a single-member LLC, owned by Wilkins through her single-member LLC YaVaWi Enterprises (which is also a single-member LLC, for which Wilkins is the sole member and owner).  At all relevant times, Wilkins has been the owner of all of 21YT's property, including the Documentary, and has treated 21YT as a sole proprietorship and her alter ego with respect to the ownership of the Documentary.

7.     Defendant **Charles E. Phillips, Jr.** is an individual residing in New York City, New York, who does business in California including entering into agreements as set forth herein.

8.     Upon information and belief, Plaintiffs aver that defendant Micro Productions LLC ("*Micro*") is a Limited Liability Company incorporated under the laws of the State of California with its principal place of business in San Francisco, California.  Micro has similarly done business in Los Angeles County, California as set forth herein.

9.     Plaintiffs are informed and believe and based thereon allege that Phillips is, and at all times material hereto was, the principal member, manager, shareholder, officer, director and/or owner of Micro and at all times relevant hereto directly owned, controlled, dominated, used, managed and operated Micro. Plaintiffs are further informed and believe and based thereon allege that Micro is, and at all times relevant hereto has been, a mere shell and sham without sufficient capital assets to meet its debts, obligations and liabilities. Plaintiffs are further informed and believe and based

thereon allege that at all times material hereto Micro failed to follow corporate formalities and maintain a corporate identity separate and distinct from Phillips, and Micro has been a business conduit and alter ego of Phillips.

10.    Adherence to the fiction of the separate legal existence of Micro, on the one hand, and Phillips, on the other hand, as entities distinct from one another would permit abuse of the corporate privilege, would promote injustice, and would sanction a fraud upon Plaintiffs.

## JURISDICTION AND VENUE

11.    This action arises under the Copyright Act, 17 U.S.C.§101 *et seq.*, and the common law of the State of California.

12.    This court has subject matter jurisdiction over this action pursuant, inter alia, to 28 U.S.C §§1331 and 1338.  To the extent that this action is based on related state claims, the Court has supplemental jurisdiction thereto under 28 U.S.C. §1367.

13.    This Court has personal jurisdiction over Defendants because, among other things, Defendants have done business in the State of California and in this judicial district, the act of infringement complained of herein is averred to have occured in the State of California and in this judicial district, and Defendants have caused injury to Plaintiffs and their intellectual property within the State of California and in this judicial district.

14.    Venue is proper in this district pursuant to 28 U.S.C. §§1391 and 1400 in that defendants have transacted business and are present in the Central District of California, and as set forth herein, a substantial part of the events and/or omissions giving rise to the Plaintiffs' claims occurred in this district.

//

//

## THE PROTECTED WORKS

15.     In or about 2011, Plaintiffs completed an audiovisual work protected by federal copyright law, specifically a Documentary film entitled "The Glamorous Lie" (referred to hereinafter as the "**_Documentary_**" or the "**_Copyrighted Work_**").

16.     The Copyrighted Work is original to Plaintiffs and thus copyrightable subject matter under the laws of the United States of America.

17.     On or about August 10, 2011, Plaintiffs complied in all respects with the Act of October 19, 1976 Title 1 §101,90 Stat. 2541; 17 USC §§401-412, and all other laws governing copyright and sought to secure the exclusive rights and privileges in and to the copyright of the Documentary.  A true and correct copy of the Copyright Registration dated September 9, 2011 is attached hereto as **EXHIBIT "A"**.

## FACTUAL AVERMENTS

18.     Between 2001 and August 2009, Wilkins was involved in what she believed was an exclusive and committed relationship with Phillips.  However, in August 2009, (a) Wilkins discovered that Phillips was seeing a string of other women, and worse, (b) despite having told Wilkins that he was divorced from his wife and that their relationship had ended in 2001 (other than finalizing certain details _e.g._ alimony, child support, child custody), Wilkins learned that he was still married to his wife Karen Phillips.

19.     Thereafter, Wilkins ended her relationship with Phillips.  As a result, Wilkins became alarmed that there was a public perception that she was Phillips's "mistress"– a perception that Phillips was only all to happy to foster as it diminished the extent of his true misconduct.  Among other things, despite promising Wilkins that he'd issue a press release explicitly stating that Wilkins was not his mistress, Phillips reneged on his promises and failed to make that statement.

20.     In about early 2010, Wilkins decided to make a documentary memoir about her efforts to move on with her life, in the hopes of inspiring other women in relationships with toxic men, and to describe several products she had invented and patented.

21.     Accordingly, Wilkins entered into an agreement with a third party, Mark Alamares ("*Alamares*").  Alamares had represented to Wilkins that he had substantial experience in the film industry and could assist her into the preparation of a documentary ; unbeknownst to Wilkins, Alamares had dramatically over-represented his true qualifications, and had no experience in preparing a documentary.

22.     The agreement between Wilkins and Alamares was confirmed in a written Deal Memo prepared by Alamares on or about May 3, 2010.  While the Deal Memo was never signed by Alamares, its terms were thereafter orally agreed to.

23.     Thereafter, in or about November 2010, Wilkins and Alamares prepared a further writing entitled a Production Services Agreement and similarly orally agreed to all of its terms.

24.     Subsequent to her break-up with Phillips, Wilkins came to believe that she was being watched and followed by strangers.  Phillips initially denied having any involvement in this surveillance, but during the preparation of the Documentary, Wilkins learned that these strangers were private investigators hired by Phillips (after which time, Phillips "came clean" and admitted the same– though he continued to misrepresent the extent of their surveillance).

//

25.   Plaintiffs aver the following upon information and belief: (a) that in June 2011, unbeknownst to Wilkins, Alamares, through an agent, reached out to Phillips in order to sell a copy of the Documentary to him; (b) that Alamares was inspired to do so because he had himself become terrified after realizing he was under surveillance by Phillips and because his relationship with Wilkins had soured after those around her began to observe that he had misrepresented to Wilkins his qualifications; and (c) that thereafter, Alamares and Phillips (through his attorneys and investigators) began a series of negotiations concerning a transfer of the Documentary.

26.   On or about July 8, 2011, Wilkins discovered that Alamares had absconded with the Documentary, after her executive protection agents went to his home and discovered him thereat loading his van with what they believed to be Wilkins's property.  Wilkins's agents demanded that the return Wilkins's property, but Alamares refused.

27.   Upon information and belief, Plaintiffs aver that after his misconduct was discovered, late into the evening of that same night, Alamares finalized a series of agreements between himself, Phillips, and his company Micro, which provided, inter alia, that any copyright interest that Alamares purported to have in the Documentary was transferred to Phillips's company Micro.

28.   However, upon information and belief, Plaintiffs further aver that (a) Phillips, Micro and Alamares all knew at all relevant times that Alamares had no right in the Documentary, including, among other reasons, because (b) Alamares refused to represent that he actually had any interest in the Documentary in his agreements with Phillips/Micro.  Furthermore, Alamares transferred not only rights in the Documentary but the original physical hard drives containing the Documentary itself (which belonged to Wilkins), depriving Plaintiffs of any access to same.

29.     While Alamares later purported to have provided a copy of the Documentary to Wilkins, (a) Wilkins's hard drives were never returned to her, (b) Micro and Phillips kept the original footage, Documentary and drives and continue to maintain improper possession of same to the present date, and (c) upon information and belief, Wilkins avers that not all of the footage was returned to her.

30.     Plaintiffs further aver the following upon information and belief: that after Phillips had inspired Alamares to steal Wilkins's Documentary and footage, and provide it to him, he thereafter prepared a derivative work of the Documentary footage, namely his own "cut" of the raw footage of the Documentary in which he took various footage of Wilkins speaking out of context in order to foster a wildly untrue narrative, in which Phillips was the victim of a so-called "extortion scheme" by Wilkins (the "*Phillips Reel*").  (Thereafter, Alamares began to parrot for the very first time this same wild "extortion" fairy tale– despite the fact there is no truth to same).

31.     It will be a subject of discovery to whom Phillips has displayed the Phillips Reel, and Plaintiffs anticipate seeking leave to amend to include further infringement claims as such discovery permits.

32.     Upon information and belief, Plaintiffs further aver that Phillips, through Micro, even assert an ownership interest in Plaintiffs' Documentary.  In fact, Wilkins spent not less than $300,000.00 in connection with the Documentary, was the true author and subject of the Documentary, and at all relevant times had "final say" as to the contents of the Documentary, and there is thus no basis for Phillips or Micro to assert any ownership claim.

//

33.     Because Phillips and Alamares entered into a surreptitious relationship and obscured the existence of the agreements between them, Wilkins was ignorant of Phillips's role in the theft of the Documentary until January 2012, when it was disclosed to her that he was in possession of her Documentary and footage (with Alamares the obvious source for same)

34.     Thereafter, on or about August 20, 2012, Phillips contacted Wilkins by telephone, in order to threaten Wilkins with various retaliations if she did not give up on seeking the return of her property.   Following the termination of that call, Phillips sent additional threats to Wilkins by e-mail.  Although Phillips's initial e-mail was through an "anonymous" e-mail address– upon information and belief, Plaintiffs aver that Phillips often sent her threatening e-mails through anonymous e-mail addresses over the years, and that this anonymous e-mail had similarly been drafted by Phillips. Furthermore, Wilkins replied to that anonymous e-mail directly to (a) Phillips and (b) Wilkins's attorneys, and Phillips, in kind, continued in the conversation immediately, without ever denying that he had sent the initial e-mail, essentially confirming that it was his work of authorship.

35.     In their e-mail exchange, Phillips' threats escalated, namely Phillips threatened that Wilkins had outstanding arrest warrants for arson and "credit card fraud", and made vague references to "embezzlement at Morgan, a decade of criminal prosecution at Lori's, police raids on video, Teddy and exlax Potato Girl and Rabbi, bareback, cheating on your husband John, black bathrooms, [and an] A1 Turner eviction law suit."

36.     For those reasons, Phillips threatened that Wilkins should "be smart and get on with your life" and that Wilkins was "playing with fire."

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California  90212

37.     Though she had no idea and still has no idea what Phillips was referring to, Wilkins nevertheless suffered severe emotional distress, loss of sleep and anxiety from these accusations, including the extremely serious threats that there warrants out for her arrest to which she was unaware.

38.     Wilkins ultimately went to a police department in New York City and seeking to turn herself in-- at which time, she learned that Phillips had just once again been lying and there were no warrants out for her arrest.

39.     Upon information and belief, Plaintiffs aver that Phillips never had any reason to believe there were such warrants out for her arrest and said otherwise only in order to inflict further suffering upon Wilkins, as part of his years-long retaliation against her for breaking up with him and her knowledge of his misconduct towards her.

40.     Again because Phillips and Alamares entered into a surreptitious relationship and obscured the existence of the agreements between them, Wilkins was ignorant of the existence of Micro, its relationship to Phillips or Alamares, or its involvement in the theft of her Documentary until November 2, 2012, whereupon she learned of its existence in her lawsuit against Alamares from Alamares's counsel.

## FIRST CLAIM FOR RELIEF FOR DECLARATORY RELIEF

41.     Plaintiffs hereby repeat and re-aver by reference all facts and averments contained in paragraphs 1 through 40 of this Complaint as though fully and completely set forth in full herein.

42.     As a result of the malicious history exhibited by Phillips towards Wilkins, Plaintiffs have a reasonable apprehension that Defendants will file suit against her in connection with their claims to have an ownership interest in the Documentary film she prepared.

43.    An actual controversy thus exists between Plaintiffs and Defendants as to whether (a) Defendants have any ownership interest in the Documentary, and (b) whether Defendants' preparation of derivative works or other exploitation therefrom infringes the registered copyrights of the Plaintiffs.

44.    Plaintiffs aver, and Defendants deny, that as a matter of law, her company 21 Yellow Tulips LLC is the exclusive author of the works of authorship set forth in the attached EXHIBIT "A", and accordingly, only Plaintiffs have any right to prepare derivative works therefrom or to display any portion therefrom to members of the public.

45.    Plaintiffs are thus entitled to a declaratory judgment against Defendants as set forth in Paragraphs 44-45 above pursuant to the Copyright Law of the United States, and for an order enjoining Defendants (and their agents and attorneys) from further asserting rights under copyright in and to the works of authorship set forth in EXHIBIT "A", attached hereto.

46.    Plaintiffs are further entitled to costs and attorneys' fees as provided in 17 U.S.C. §505.

### SECOND CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT

47.    Plaintiffs hereby repeat and re-aver by reference all facts and averments contained in paragraphs 1 through 40 of this Complaint as though fully and completely set forth in full herein.

48.    Defendants have infringed the Copyrighted Work by preparing derivative works without authorization, including the Phillips Reel.

//

49.   As a result of its infringement, Plaintiff is entitled to their actual damages in addition to any profits attributable to the infringement; alternatively, statutory damages for infringement in the maximum statutory amount allowed, in that, inter alia, Defendants' conduct was willful and with full knowledge of an complete disregard for the Plaintiffs' rights.

50.   If Plaintiffs should elect to pursue statutory damages, Plaintiffs will also seek an increased award based upon Defendants' willful and deliberately buried and hidden infringement.

51.   As a direct and proximate result of Defendants' infringement, Plaintiffs have incurred attorneys' fees and costs, in an amount according to proof, which are recoverable under the provision of the Copyright Act, including 17 U.S.C. §505.

52.   It will be a subject of discovery to whom Phillips has displayed the Phillips Reel, and Plaintiffs anticipate seeking leave to amend to include further infringement claims as such discovery permits.

**THIRD CLAIM FOR RELIEF FOR INTERFERENCE WITH CONTRACT**

53.   Plaintiffs hereby repeat and re-aver by reference all facts and averments contained in paragraphs 1 through 40 of this Complaint as though fully and completely set forth in full herein.

54.   As described above, in 2010, through the Deal Memo and Production Services Agreement, Plaintiffs contracted with Alamares, which contract, inter alia, provided that Plaintiffs would exclusively control the Documentary and all footage relating thereto.

55.   Defendants intended to and did, in fact, disrupt Plaintiffs' contract with Alamares, in that Phillips purchased Alamares's rights in the Documentary, seized control over the Documentary through Alamares, and thereafter has maintained control

and possession of the original copies of the Documentary and footage therefor (as well as the hard drives owned by the Plaintiffs).

56.    As a result of Defendants' misconduct, Plaintiffs have incurred damage, in an amount to be determined according to proof.  Among other things, as a result of Defendants' interference, Plaintiffs were forced to incur significant expenses in recovering copies of the Documentary from Alamares and repairing those copies (which were returned in a vandalized condition).

57.    Defendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably with full knowledge of the adverse effects of their actions on Plaintiffs, and with willful and deliberate disregard of the consequences to Plaintiiffs, and that such actions were authorized, ratified and adopted by the officers, directors and managing agents of Micro.  Among other things, Defendants tortiously interfered with Alamares's contract with Wilkins as part of a years-long scheme to harass Wilkins and her associates, and to retaliate against Wilkins for having broken up with Phillips and for her knowledge of his long history of sexual misconduct.  As a direct result of the willful, deliberate, and malicious conduct of Defendants, Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined at the time of trial.

## FOURTH CLAIM FOR RECEIPT AND RETENTION OF STOLEN PROPERTY

58.    Plaintiffs hereby repeat and re-aver by reference all facts and averments contained in paragraphs 1 through 40 of this Complaint as though fully and completely set forth in full herein.

59.    As set forth above, Plaintiffs are informed and believe, and upon that basis allege, that Defendants knowingly purchased Plaintiffs' stolen property from Alamares,

1   and have thereafter concealed and withheld Plaintiff's property.

2      60.   Defendants still maintain wrongful possession and control over the

3   Plaintiff's property (including the physical copies of the Documentary and the hard

4   drives related thereto) to this day.

5      61.   As a result of Defendants' misconduct, Plaintiffs have incurred

6   considerable costs in (a) repairing the vandalized Property (which Plaintiffs presently

7   estimate in an amount not less than $20,000), (b) pursuing the recovery of the Property

8   (in an amount Plaintiffs presently have not determined, but in excess of $700), and (c)

9   Plaintiff Wilkins suffered severe emotional distress, loss of time, and physical

10  discomfort. As a direct and proximate result of the intentional acts of Defendants, and

11  each of them, Wilkins was required to and did employ physicians to examine, treat and

12  care for her, and incurred medical and incidental expenses.  Plaintiffs are informed and

13  believe, and on such information and belief avers, that she will be required to employ

14  physicians in the future, and will incur further medical and incidental expenses.  The

15  exact amounts thereof are unknown at this time, and leave of Court will be sought to

16  amend these pleadings to set forth the exact amounts when the same are ascertained.

17     62.   Defendants' actions were in violation of California Penal Code §496,

18  entitling Plaintiffs to damages pursuant to California Penal Code §496(c), i.e. three

19  times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and

20  reasonable attorney's fees should they prevail.

## FIFTH CLAIM FOR RELIEF FOR

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

21     63.   Plaintiffs hereby repeat and re-aver by reference all facts and averments

22  contained in paragraphs 1 through 40 of this Complaint as though fully and completely

23  set forth in full herein.

64.    The conduct of Micro as alleged above in inspiring the theft of Plaintiff's property and purchasing the stolen property from Alamares were without regard for the harm it would cause Plaintiff, was outrageous, intentional and vile conduct by Defendant Micro.  Defendant's actions were motivated by a years-long campaign waged against Wilkins to harass Wilkins's associates, and to retaliate against Wilkins for having broken up with Phillips and for her knowledge of his long history of sexual misconduct.

65.    The conduct of Phillips as alleged above in paragraphs 35-39 (i.e. threatening Wilkins that there were (a) "secret" crimes and improprieties that were aware of and could expose if Wilkins did not stop "playing with fire" or otherwise excuse Phillips' long history of misconduct, and (b) active warrants out for her arrest despite knowing the untruth of those statements) were outrageous actions with the knowledge that those actions would cause Plaintiff to suffer humiliation, anguish and emotional and physical distress.  Here too, Defendant's actions were motivated by a years-long campaign waged against Wilkins to harass Wilkins, subject her to emotional distress, and otherwise retaliate against Wilkins for having broken up with Phillips and for her knowledge of his long history of sexual misconduct.

66.    As a direct and proximate result of the aforementioned heinous and outrageous acts by Defendants, and each of them, Plaintiff has suffered humiliation, mental anguish, emotional injuries, loss of energy, loss of sleep, severe tension and profound shock and anxiety, all to Plaintiff's general damage in a sum within the jurisdictional requisites of this Court.

//

67.    As a further direct and proximate result of Defendants intentional infliction of emotional distress upon Plaintiff, Plaintiff has employed physicians and/or therapists to examine, treat and care for her, has incurred medical and incidental expenses in connection therewith, and may incur future medical and incidental expenses as may be shown according to proof.  The exact amounts thereof are unknown at this time.

68.    In doing these acts, Defendants acted maliciously and without probable cause and without regard for the rights, health and feelings of Plaintiff, and with intent, design, scheme and purpose to profit by injuring Plaintiff, and therefore Plaintiff is entitled to an award of exemplary and punitive damages against Defendants in order to punish them and deter them from such conduct in the future in a sum to be shown at the time of trial.

## SIXTH CLAIM FOR RELIEF FOR
## CONVERSION

69.    Plaintiffs hereby repeat and re-aver by reference all facts and averments contained in paragraphs 1 through 40 of this Complaint as though fully and completely set forth in full herein.

70.    At all times herein mentioned, notwithstanding the dispute over the ownership of the copyrights to the Documentary, Plaintiffs were, and still are, the owner of the physical copies of the Documentary (and footage related thereto) extant on July 8, 2011 as well as the hard drives containing same (the "*Property*"), and is legally entitled to possession of the Property.

//

71.  While harm to value is the ordinary remedy for conversion, a manifest injustice will result if Plaintiffs' damages are limited thereto, because (a) Alamares purported to return copies of the Documentary to Wilkins, and (b) those copies had been vandalized.  In addition, because the Documentary is an unreleased work of art, personal to the Plaintiffs,  it would be manifestly unjust to limit Plaintiffs' damages at this time.  Finally, Plaintiffs are informed and believe and upon that basis allege that Defendants will likely attempt to use a "harm to value" claim as a smokescreen to intrude into private areas of Plaintiffs' life and business having no possibly relevancy.

72.  On or about July 8, 2011, Defendants wrongfully converted the Property to their own use by conspiring with Alamares and on or about that date, taking the Property from Alamares, who had himself wrongfully removed the Property from the control of the Plaintiffs without their knowledge or consent.  Defendants are still in wrongful possession of the Property to the present date.

73.  As a result of the conversion, Plaintiffs have incurred considerable costs, including in (a) repairing the vandalized Property (which Plaintiffs presently estimate in an amount not less than $20,000), (b) pursuing the recovery of the Property (in an amount Plaintiffs presently have not determined, but in excess of $700), and (c) Plaintiff Wilkins suffered severe emotional distress, loss of time, and physical discomfort. As a direct and proximate result of the intentional acts of Defendants, Wilkins was required to and did employ physicians to examine, treat and care for her, and incurred medical and incidental expenses.  Plaintiffs are informed and believe, and on such information and belief avers, that she will be required to employ physicians in the future, and will incur further medical and incidental expenses.  The exact amounts thereof are unknown at this time, and leave of Court will be sought to amend these pleadings to set forth the exact amounts when the same are ascertained.

74. Defendants, in doing the things herein alleged, acted willfully, maliciously, oppressively and despicably with full knowledge of the adverse effects of their actions on Plaintiffs, and with willful and deliberate disregard of the consequences to Plaintiiffs, and that such actions were authorized, ratified and adopted by the officers, directors and managing agents of Defendants.  As a direct result of the willful, deliberate, and malicious conduct of Defendants, Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined at the time of trial.

**WHEREFORE,** Plaintiff prays for Judgment against Defendants as follows:

*First Claim for Relief–Declaratory Relief*

1.  For a judicial determination and order declaring that the Copyrighted Work is owned exclusively by the Plaintiffs, and that Plaintiffs have the exclusive right in the Copyrighted Work, including to prepare derivative works therefrom and to display any portion thereof;

2.  For an order enjoining Defendants, their agents, and their attorneys from further asserting rights under copyright in and to the Copyrighted Work, from interfering with the exploitation of the Copyrighted Work by the Plaintiffs, from preparing any derivatives or copies of the footage, and from displaying any portion of the footage or Documentary;

3.  For preliminary and permanent injunctions enjoining Defendants, and all persons acting in concert or participation with Defendants, from (a) directly or indirectly reproducing, distributing, performing, or otherwise infringing in any manner on Plaintiffs' Copyrighted Work; (b) causing, contributing to, inducing, enabling, facilitating or participating in such infringement, or (c) providing any copy of the Copyrighted Work (or the

Sherman Law Group
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California  90212

Property) to any third party, or otherwise distributing or disposing of the Copyright Work, or any portion thereof.

4.  For an order impounding all copies of the infringing works made and used in violation of Plaintiffs' exclusive rights in the Copyrighted Work, pursuant to 17 U.S.C. §503;

5.  For the recovery of Plaintiffs' full costs and reasonable attorneys' fees as provided in 17 U.S.C. Section 505; and

6.  For such additional and further relief, in law and equity as the Court may deem just and proper;

## *Second Claim for Relief–Copyright Infringement*

7.  For damages in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000.00 with respect to each copyrighted work infringed either directly or indirectly, or for such other amounts as may be proper pursuant to 17 U.S.C. §504(c);

8.  For preliminary and permanent injunctions enjoining Defendants, and all persons acting in concert or participation with Defendants, from (a) directly or indirectly reproducing, distributing, performing, or otherwise infringing in any manner on Plaintiffs' Copyrighted Work; (b) causing, contributing to, inducing, enabling, facilitating or participating in such infringement; or (c) providing any copy of the Copyrighted Work (or the Property) to any third party, or otherwise distributing or disposing of the Copyright Work, or any portion thereof.

9.  For an accounting;

//

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212

10.    For an order impounding all copies of the infringing works made and used in violation of Plaintiffs' exclusive rights in the Copyrighted Work, pursuant to 17 U.S.C. §503;

11.    For the recovery of Plaintiffs' full costs and reasonable attorneys' fees as provided in 17 U.S.C. Section 505; and

12.    For such additional and further relief, in law and equity as the Court may deem just and proper;

### *Third Claim for Relief– Interference with Contract*

13.    For actual, special, incidental and consequential damages in a sum as may be shown according to proof;

14.    Punitive damages according to proof;

### *Fourth Claim for Relief– Receipt and Retention of Stolen Property*

15.    For compensatory damages in an amount according to proof at the time of trial;

16.    For punitive and exemplary damages, according to proof at the time of trial;

17.    For special damages as to the costs to repair the vandalism to Plaintiffs' property, in an amount according to proof at trial, not less than $20,000;

18.    For special damages as to the costs to recover the property, in an amount according to proof at trial, not less than $700;

19.    For Plaintiffs' emotional distress, in an amount according to proof at the time of trial;

20.    For unjust enrichment damages, in an amount according to proof at trial, not less than $105,000.00;

**COMPLAINT**

SHERMAN LAW GROUP
9454 Wilshire Boulevard, Suite 850
Beverly Hills, California 90212

21. For treble damages pursuant to the relevant provisions of the California Penal Code, including Penal Code §496(c);

22. For costs of suit and reasonable attorney's fees pursuant to the relevant provisions of the California Penal Code, including Penal Code §496(c);

## *Fifth Claim for Relief– Intentional Infliction of Emotional Distress*

23. Special Damages, according to proof;

24. General Damages for emotional distress and mental anguish, in a sum according to proof;

25. Exemplary and Punitive Damages in a sum appropriate to punish Defendants, in an amount according to proof.

## *Sixth Claim for Relief– Conversion*

26. For compensatory damages in an amount according to proof at the time of trial;

27. For punitive and exemplary damages, according to proof at the time of trial;

28. For special damages as to the costs to repair the vandalism to Plaintiffs' property, in an amount according to proof at trial, not less than $20,000;

29. For special damages as to the costs to recover the property, in an amount according to proof at trial, not less than $700;

30. For Plaintiffs' emotional distress, in an amount according to proof at the time of trial;

31. For an order compelling the return of the Property to the Plaintiffs;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *As to All Claims For Relief:*

32.    For costs of suit and prejudgment interest as provided for by the
       *California Civil Code*;

33.    For such other relief as is just and proper.

Dated: July 8, 2014                    SHERMAN LAW GROUP

                                       By: _____
                                          ABHAY KHOSLA, ESQ.
                                          Attorneys for Plaintiffs YAVAUGHNIE WILKINS and
                                          21 YELLOW TULIPS LLC

PLAINTIFFS HEREBY REQUEST A JURY TRIAL IN THIS ACTION.

Dated: July 8, 2014                    SHERMAN LAW GROUP

                                       By: _____
                                          ABHAY KHOSLA, ESQ.
                                          Attorneys for Plaintiffs YAVAUGHNIE WILKINS and
                                          21 YELLOW TULIPS LLC

# EXHIBIT "A"

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PAu 3-578-486

**Effective date of
registration:**

September 9, 2011

---

## Title

Title of Work: The Glamorous Lie

Previous or Alternative Title: The YaVaughnie Wilkins Story

## Completion/Publication

Year of Completion: 2011

## Author

■   Author: 21 Yellow Tulips, LLC

Author Created: entire motion picture

Work made for hire: Yes

Citizen of: United States   Domiciled in: United States

## Copyright claimant

Copyright Claimant: 21 Yellow Tulips, LLC

c/o Pierce Law Group LLP, 9100 Wilshire Blvd Suite 225 E, Beverly Hills,
CA, 90212, United States

## Limitation of copyright claim

Material excluded from this claim: preexisting footage, preexisting photograph(s), preexisting music,
Preexisting documents

New material included in claim: all other cinematographic material, additional new footage, production as a
motion picture, new narration, editing

## Rights and Permissions

Organization Name: Pierce Law Group LLP

Name: David Albert Pierce

Email: david@piercelawgroupllp.com   Telephone: 310-274-9100

Address: 9100 Wilshire Blvd Suite 225 E

Beverly Hills, CA 90212  United States

## Certification

Page 1 of 2

Name:   David Albert Pierce

Date:   August 10, 2011

Applicant's Tracking Number:   1135.005

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge **Beverly Reid O'Connell** and to

Magistrate Judge **Andrew J. Wistrich** .

The case number on all documents filed with the Court should read as follows:

### 2:14−cv−05278−BRO (AJWx)

Pursuant to General Order 05−07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery−related motions. All discovery−related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U.S. District Court

July 8, 2014
Date

By  /s/ Estrella Tamayo
Deputy Clerk

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases removed from state court, on all parties served with the Notice of Removal) by the party who filed the Complaint (or Notice of Removal).*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

YaVaughnie Wilkins; 21 Yellow Tulips LLC, a
California limited liability company,

_____
*Plaintiff(s)*

v.

Micro Productions LLC, a California limited liability
company; Charles E. Phillips, Jr.,

_____
*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

CV14-5278 BRO - AJW×

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Micro Productions LLC, a California limited liability company; Charles E. Phillips, Jr.;
1484 Page Street, San Francisco, CA 94117.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Richard Lloyd Sherman, Sherman Law Group, 9454 Wilshire Blvd., Ste. 850, Beverly Hills, CA 90212; (310) 246-0321; facsimile: (310) 246-0305.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*



Date:   JUL - 8 2014   _____
*Signature of Clerk or Deputy Clerk*

1184

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| YaVaughnie Wilkins; 21 Yellow Tulips LLC, a California limited liability company | Micro Productions LLC, a California limited liability company; Charles E. Phillips, Jr., |

| **(b)** County of Residence of First Listed Plaintiff   Los Angeles <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   San Francisco <br> *(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|
| **(c)** Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. <br><br> Richard Lloyd Sherman, Esq., Abhay Khosla, Esq., Sherman Law Group, 9454 Wilshire Blvd., Ste. 850, Beverly Hills, CA 90212; (310) 246-0321 | Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ according to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

17 U.S.C. Section 101-- declaratory judgment as to ownership of copyrights, and copyright infringement, as well as state law claims.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   CV14-5278

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes  [X] No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right  ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | [ ] NO.  Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right  ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right  ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes  [X] No | | [ ] NO.  Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right  ➡ | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |

| D.1.  Is there at least one answer in Column A? | D.2.  Is there at least one answer in Column B? |
|---|---|
| [ ] Yes  [X] No | [ ] Yes  [X] No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right.  ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below.  ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above:  ➡ | Central |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes  [X] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**    ☒ NO    ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?**    ☒ NO    ☐ YES

If yes, list case number(s):

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**                                          DATE:  07/07/14

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |